UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DOYLE MIMS,

        Plaintiff,

v.

UNKNOWN STEPHENS et al.,

        Defendants.

_____/

Case No. 2:19-cv-98

Honorable Gordon J. Quist

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.     **Factual allegations**

Plaintiff Doyle Mims is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Michigan. The events about which he complains occurred, in part, while he was at MBP and, in part, while he was being

transported from one prison facility to another. Plaintiff sues the following MDOC employees: Custody Transport Officers (unknown) Stephens and (unknown) Perry; and MBP Grievance Coordinator G. Caron.

Plaintiff alleges that on April 18, 2019, he was placed on the MDOC transportation bus at 7:30 in the morning. The bus traveled to several prisons to pick up inmates. While en route from the Bellamy Creek Correctional Facility (IBC) to the St. Louis Correctional Facility (SLF), the bus suddenly "rocked" and "shook very hard." (Compl., ECF No. 1, PageID.3.) There were no seat belts on the bus, and Plaintiff was thrown around. His head hit the window and his back slammed against the hardcover seat.

Defendant Stephens explained to the bus passengers that the bus had crashed. Plaintiff asked for "medical attention." (*Id.*) Defendant Stephens allegedly responded that if Plaintiff and the other inmates "kept asking," Stephens would "drive the bus over the bridge and drown you fuckers." (*Id.*) These comments made Plaintiff fear for his life, so he "resisted help needs[.]" (*Id.*)

As the bus continued its journey, Plaintiff contends that he "blanked out" twice and had "sharp" pains in his head, neck and back. (*Id.*) When the bus arrived at SLF, at around 11:00 a.m., Plaintiff again asked for "medical attention." (*Id.*, PageID.4.) Defendant Perry allegedly told him, "No." (*Id.*) Defendants Perry and Stephens took some time to take pictures of damage to the back of the bus, and then the bus and its passengers traveled to the Chippewa Correctional Facility (URF), where Plaintiff disembarked.

Plaintiff stayed at URF for several days, where he again asked for "medical attention." (*Id.*) Apparently, his requests were denied. After five days at URF, Plaintiff was taken to MBP.

2

Plaintiff allegedly wrote a grievance on April 23, 2019, and gave it to an Assistant Residential Unit Supervisor (ARUS).[1] He received no reply to the grievance. Plaintiff was seen by medical staff on April 25 or 26.

Plaintiff tried to file his grievance again on April 26, by giving it to a prisoner counselor, but he received no response. On April 29, he sent a kite to Grievance Coordinator Caron, asking why he had not received a response to his grievance. Plaintiff did not receive a response to this kite.

Plaintiff then asked for a step II grievance appeal form in order to take his grievance to the next level of the grievance process. In response, he received a copy of his original grievance with a note stating that he needed to file it at URF.

Plaintiff sent a kite asking Caron for a step III grievance form because Plaintiff could not file his grievance at URF, but Caron allegedly denied Plaintiff's request.

Plaintiff contends that he continues to suffer from headaches and back pain stemming from the bus accident, but he is not being given "proper attention." (*Id.*, PageID.5.) He has not been able to see a doctor about these issues. He also claims that Defendant Caron is denying him due process by preventing him from exhausting his grievance remedies.

As relief, Plaintiff seeks compensatory and punitive damages. He also wants transport officers to put seat belts on the transport bus.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

---
[1] Plaintiff does not specify the subject of this grievance.

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Transport Officers Stephens and Perry

Plaintiff alleges that the transport officers ignored his requests for "medical attention" after the bus accident. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue was sufficiently serious. *Id.* In other words, the inmate must show that he was held under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something

5

more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff does not state a claim because he does not allege that Defendants were aware of facts from which to infer that Plaintiff faced a substantial risk of harm in the absence of medical care. Although Plaintiff was experiencing pain in his neck and back, he alleges only that he asked for "medical attention." He does not allege that he told Defendants about his specific needs, or that his need for care would have been obvious. And even if Defendants were aware of Plaintiff's pain, the allegations do not indicate that he needed immediate treatment. Considering that Plaintiff was on a bus, on the way to a prison facility with qualified medical staff, it would have been reasonable for Defendants to deny care for a few hours until Plaintiff could be properly assessed and treated at a prison facility. Thus, Defendants' refusal to respond to Plaintiff's requests for medical attention does not rise to an Eighth Amendment violation.

Furthermore, Defendant Stephens' degrading comments and threat to drive Plaintiff and the other prisoners into a river did not violate Plaintiff's constitutional rights. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim);

*Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882, at *1 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Finally, the fact that Defendants transported Plaintiff on a bus without seat belts does give rise to a constitutional claim. Buses without seat belts are common. Under normal circumstances, without reckless driving or other risk factors, transporting a prisoner in a vehicle without seat belts does not subject the prisoner to a substantial risk of serious harm. *See Dexter v. Ford Motor Co.*, 92 F. App'x 637, 641 (10th Cir. 2004) (concluding that "a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension" because "[t]he risk of a motor vehicle accident is dependent upon a host of factors unrelated to the use of seatbelts"); *accord Anderson v. Theibert*, No. 16-4020, 2017 WL 3140581, at *3 (6th Cir. Feb. 27, 2017); *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012); *Cooks v. Crain*, 327 F. App'x 493, 494 (5th Cir. 2009); *Smith v. Sec'y For Dep't of Corr.*, 252 F. App'x 301, 303-04 (11th Cir. 2007). Accordingly, Plaintiff fails to state an Eighth Amendment claim, or any other claim under § 1983, against Defendants Stephens and Perry.

### B. Grievance Coordinator Caron

Plaintiff claims that Defendant Caron deprived him of due process by refusing to process his grievances or otherwise allow him to exhaust his claims through the prison grievance process. However, Plaintiff has no due process right to file a prison grievance. Courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Caron's conduct did not deprive him of due process. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

Moreover, Defendant Caron could not have prevented Plaintiff from exhausting his available prison grievance remedies in order to prevent him from pursuing a claim in court. The exhaustion requirement in 42 U.S.C. § 1997e(a) only mandates exhaustion of *available* administrative remedies. If Plaintiff was improperly denied access to the grievance process, that process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the

grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). Accordingly, Plaintiff does not state a claim against Defendant Caron.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Furthermore, because the complaint is subject to dismissal, Plaintiff's request for appointment of counsel (ECF No. 3.) will be denied. There is no need to appoint counsel to represent Plaintiff because he does not state a viable claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated: June 10, 2019  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE